IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TAVARES EUGENE WILLIAMS,

      Petitioner,

v.                                CASE NO. 1:11-cv-22-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner initiated this case by filing, through counsel, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  The Petition stems from Petitioner's Alachua County conviction of first degree premeditated murder, for which he received a life sentence.  Respondent filed a response and an appendix with relevant portions of the state-court record, and Petitioner filed memoranda, a reply, and supplemental authority.  Docs. 8, 21, 22, 31, 37, 38, 39.  Upon due consideration of the Petition, the state-court record, and the parties' arguments, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

      The state court procedural history of Petitioner's case may be summarized as follows.   Petitioner was charged with the first degree premeditated murder of his guardian, Barbara Roth, by striking her in the head with a baseball bat on January 24,

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

2002.  Petitioner was almost 19 years of age and a high school senior at the time of the

murder.

Assistant Public Defender Elinor Wilkov was appointed to represent Petitioner.

Between the time of his arrest and the commencement of trial in January 2005,

Petitioner underwent competency examinations and hearings and was ultimately

deemed competent to go to trial.  Other pretrial proceedings included the substitution of

Ed Tilton as counsel, the reappointment of Ms. Wilkov several months later, Petitioner's

waiver of counsel and invocation of right of self-representation shortly before trial, and

the reappointment of Ms. Wilkov after the commencement of voir dire.  Immediately

prior to trial, Petitioner entered a waiver under *Nixon v. Singletary*, 758 So. 2d 618 (Fla.

2000), agreeing to concede to the jury that he had killed Ms. Roth, and to present the

defense that he was guilty of second degree murder or manslaughter, but not first

degree murder.[2]   Petitioner stated under oath "I do admit it."  *See* App. Exh. CC at 157.

The State's witnesses included Sam Roth, the victim's father; Gayle Fondren,

the manager of the apartment complex where Petitioner lived with the victim; a crime

scene investigator; Petitioner's girlfriend, Michelle Waller; the officers who took

Petitioner's videotaped confession; and the medical examiner.  At the conclusion of the

first day of testimony, the State pointed out that a motion to suppress Petitioner's

confession had been filed during Tilton's appointment as counsel, contending that

Petitioner's confession was not freely and voluntarily made.  Ms. Wilkov adopted the

motion.  Exh. C at 192, 195.  The videotape of Petitioner's interview with the detectives

---

[2]The *Nixon* waiver is erroneously referred to as "Dixon" in the trial transcript.

was played for the jury on the second day of trial.  In the interview, Petitioner initially stated that he was in a rage because of an earlier argument with Waller and was swinging a baseball bat in the living room of the apartment with his eyes closed when the victim came home.  He did not stop swinging and hit the victim, but did not mean to.  Later during the interview, following a break, the detectives told Petitioner that Waller had provided a "different version" of the incident.  Petitioner then stated that when the victim entered the apartment he told her he had a surprise for her, and told her to stand in the living room and close her eyes.  Petitioner retrieved the bat from his bedroom and hit the victim on the side of her face.  He hit her twice more on the back of the head after she fell to the floor.  App. Exh. DD at 279-80.  Additional evidence included an undated poem in Petitioner's handwriting that was found in this bedroom which the State argued showed premeditation to murder Roth.  *Id*. at 349.

At the close of the State's case, Wilkov argued that Petitioner's confession was due to be suppressed because Petitioner was not re-read his *Miranda* rights after the detectives took a break in the questioning.  The court found that the interview was continuous, and denied the motion.  Wilkov moved for a judgment of acquittal, which was denied.  *Id*. at 322-35.

The jury found Petitioner guilty of first degree murder, and the court sentenced him to life imprisonment.  Exh. B at 104-09; Exh. DD at 389.  The First DCA affirmed *per curiam* without written opinion.  *Williams v. State*, 930 So.2d 626 (Fla. 1st DCA 2006).

Petitioner filed postconviction motions and amended motions pursuant to Fla. R. Crim. P. 3.850.  The court summarily denied some claims and held an evidentiary

hearing on the following claims pertaining to Wilkov's performance: (1) Failure to seek suppression of Defendant's taped confession; (2)  Failure to obtain a ruling on suppression of the confession prior to obtaining Defendant's *Nixon* waiver; (3)  Failure to investigate, obtain, and present evidence that the victim had verbally and sexually abused the Defendant; (4) Failure to object to the admissibility of the "irrelevant and inflammatory poem;" and (5) Failure to preserve defense counsel's file.[3]

The evidence presented by Petitioner at the evidentiary hearing included testimony by the chief assistant public defender for the Eighth Judicial Circuit, John Kearns; Ms. Wilkov; the Petitioner; Petitioner's father, Virgil Williams; two psychiatrists; Petitioner's friend, Cleveland Jones; Jones' mother, Angela Hutchison; and the detectives who interviewed Petitioner following the murder.  App. Exh. LL, MM.

Following the hearing and post-hearing briefing, the trial court denied the motion on the merits of the five claims.  App. Exh. R. at 2140-45.  Petitioner appealed, and filed a brief arguing the merits of each of the five claims considered at the evidentiary hearing.  Petitioner also asserted that the trial court erred in not conducting an evidentiary hearing on his remaining claims that were summarily denied, contending that the court erred in finding that the claims were facially inadequate to require a hearing.  Petitioner did not brief the merits of the summarily-denied claims.  App. Exh. PP at 95-100.  The First DCA affirmed *per curiam* without written opinion.  App. Exh. SS.

---

[3]The fifth ground was asserted as a due process claim.  A sixth ground, counsel's failure to present evidence that Petitioner's medications could have affected the voluntariness of the crime, was withdrawn.  App. Exh. R. at 2140; Exh. PP at 4-5.

The instant Petition, which Respondent concedes is timely, followed.  Petitioner asserts 11 claims for relief.  The first five claims were the subject of the state court's postconviction evidentiary hearing.  The remaining six claims were summarily denied. Doc. 1.  Respondent contends that because Petitioner failed to argue the six summarily-denied claims in his postconviction appellate brief to the First DCA, the claims are unexhausted and procedurally defaulted and therefore foreclosed from federal review.  Doc. 21.  Petitioner's counsel concedes that she did not brief the merits of the summarily-denied claims to the First DCA, but did so in reliance on *Webb v. State*, 757 So. 2d 608, 609 (Fla. 5th DCA 2000) (holding that summarily-denied claims need not be briefed on appeal in order to be considered exhausted at the state level). Doc. 3.[4]

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

---

[4]The summarily-denied claims asserted in the Petition are: (6) Counsel's failure to pursue a self-defense strategy; (7) Counsel's failure to impeach Waller's testimony that Williams told her before the crime that he wanted to kill Roth and described how the murder occurred afterward; (8) Counsel's failure to argue the motion for acquittal with specificity; (9) Cumulative errors of trial counsel; (10) *Brady* violation regarding law enforcement interviews; and (11) Violation of 8th Amendment regarding the life sentence.  Doc. 1.

properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Pursuant to Florida law, where a movant's Rule 3.850 motion is denied after an evidentiary hearing, he must file an initial brief if he wishes to appeal the denial.  Fla. R. App. P. 9.141(b)(3).  Florida law also establishes that claims for which an appellant does not present any argument–or presents only conclusory argument–are waived. *See, e.g., Gamble v. State*, 877 So. 2d 706 (Fla. 2004).  The majority of Florida courts–including the First DCA, where Petitioner was convicted and pursued

postconviction relief–hold that this rule applies even where the evidentiary hearing in the Rule 3.850 proceeding is limited to only some of the post-conviction claims. Accordingly, a movant must present all claims–whether summarily denied or denied after an evidentiary hearing–in the initial brief to the appellate court. *Prince v. State*, 40 So. 3d 11 (Fla. 4th DCA 2010); *Williams v. State,* 24 So.3d 1252 (Fla. 1st DCA 2009) (where appellant received evidentiary hearing on some of his post-conviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in the appellate brief).

Federal district courts in Florida – including this Court – that have considered this issue have determined that a petitioner's failure to raise a ground in his brief before the Florida District Court of Appeals waives federal habeas review of such claims. *Corn v. McNeil*, No. 3:08-cv-199-MCR-EMT, 2010 WL 5811434, at *17 (N.D. Fla. Nov. 24, 2010) ("The undersigned concludes that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his appellate brief (or for which he provides only conclusory argument), even when the . . . claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas."). *See also Mays v. Secretary*, 1:10-cv-198-MP-GRJ (N.D. Fla. Jan. 28, 2014); *Ross v. McNeil*, 5:07-cv-219-RS-EMT, 2010 WL 2179039 (N.D. Fla. Apr. 14, 2010); *Sharp v. McNeil*, No. 4:07-cv-17-MP-MD, 2009 WL 981594, at *13-14 (N.D. Fla. Apr. 10, 2009); *Durain v. McNeil*, No. 2:08-cv-24-FTM-29DNF, 2008 WL 4888989, at *9 (M.D. Fla. Nov. 12, 2008); *Williams v. McDonough*, No. 8:02-CV-965-T-30MAP, 2007 WL 2330794, at *1-2 (M.D.Fla. Aug.14, 2007); *Walker v. Sec'y, Dep't of Corr.*, No. 8:05-cv-1539-T-17MAP, 2007 WL 1747181,

at *4 (M.D. Fla. June 18, 2007).

Petitioner's initial brief to the First DCA argued generally that the trial court erred

by not conducting an evidentiary hearing as to some of Petitioner's claims, but did not

brief any underlying federal constitutional issues asserted in the summarily-denied

claims.  *See* App. Exh. PP at 95-100.  The postconviction appeal record thus

establishes that the claims in Grounds 6-11 were not "fairly presented" to the First DCA,

and therefore Petitioner did not exhaust his available state remedies with respect to

each of those claims.[5]   *See* 28 U.S.C. § 2254(b)(1), (c).   Because Petitioner did not

brief the federal constitutional claims asserted in Grounds 6-11 in the instant Petition to

the First DCA, Petitioner cannot now take a second appeal from the denial of his 3.850

motion in order to successfully exhaust these claims; therefore, they are procedurally

defaulted.

Petitioner argues that asserted ambiguity in the state appellate briefing rules and

the "lack of explicit case law" regarding the need for appellate briefing suggest that the

Court should nevertheless review these claims pursuant to the rule of lenity.  Doc. 31 at

38 (citing *Rewis v. United States*, 401 U.S. 808, 812 (1971) ("ambiguity concerning the

ambit of criminal statutes should be resolved in favor of lenity"); *State v. Winters*, 346

So. 2d 991, 993 (Fla. 1977) ("Penal statutes must be strictly construed in favor of the

---

[5]The state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief, even if this claim was properly exhausted in the state courts. *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir.1987). Therefore, insofar as Petitioner's claim is based on the state court's failure to hold an evidentiary hearing, such failure is not contrary to, or an unreasonable application of federal law.  *Anderson v. Secretary for Dept. of Corrections*  462 F.3d 1319, 1330 (11th Cir. 2006).

accused where there is doubt as to their meaning and must be sufficiently explicit so that men of common intelligence may ascertain whether a contemplated act is within or without the law, and so that the ordinary man may determine what conduct is proscribed by the statute.")).  Petitioner's argument does not establish the cause-and-prejudice necessary for this Court to review a procedurally defaulted federal habeas corpus claim.  As the foregoing authority establishes, the rule of lenity applies to the interpretation of criminal statutes and not to state procedural briefing rules.

Petitioner's remaining five claims (Grounds 1-5) were exhausted in the state court and rejected on the merits, and are properly considered on federal habeas review.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* ___ *U.S.* ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the

state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[6]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct.

---

[6]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it

was meant to be.'"  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly

conclude that a State's criminal justice system has experienced the 'extreme

malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 131

S.Ct. at 786).

In *Harrington*, the Supreme Court held that "[w]hen a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed

that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary."  "Under *Harrington's* general rule,

then, a state court's simple one-word affirmance is presumed to be an adjudication on

the merits of the petitioner's claim."  *Shelton v. Secretary, Dept. of Corrections*  691

F.3d 1348, 1353 -1354 (11th Cir. 2012).

### Claims 1-2: Ineffective assistance concerning confession and Nixon waiver

Petitioner contends in his first ground for relief that Wilkov was ineffective for

failing to investigate and file a meritorious pretrial motion to suppress his confession

and request a pre-trial hearing on the motion.  Doc. 1 at 3.   As support for this claim,

Petitioner argues that there was "ample evidence in support" of a pre-trial motion to

suppress based on his assertion that his confession was not knowing and intelligent.

Petitioner contends that "witnesses and records could have established" that he

suffered from brain damage, post-traumatic stress disorder (PTSD), suicidal ideation,

lack of prescribed medication for depression, exhaustion, and a propensity to be

influenced by the style and appearance of one of the interrogating detectives.  *Id*. at 4.

In his second ground for relief, Petitioner contends that counsel was ineffective for

entering the *Nixon* waiver prior to moving to suppress the confession.  Success on this second ground depends on the success of the first ground regarding counsel's failure to file a motion to suppress.

In rejecting this claim following the evidentiary hearing, the state court assessed the claim under the *Strickland* standard and found as follows:

> Defendant testified at the [evidentiary] hearing that, at the time of the confession, he hadn't slept in approximately 36 hours, and that he was "exhausted." He testified that law enforcement suggested to him that Michelle Waller (Defendant's girlfriend at the time) wouldn't be charged as an accessory, and that he would be allowed to talk with his friends, if he cooperated. He said that he was "extremely" stressed. He testified that law enforcement said they would give him food, and that they would put in a "good word" with the judge. He also testified that he told his trial attorney, E. Wilkov, and her supervisor, J. Kearns, of the foregoing promises which induced his confession. He said that he wanted the questioning to stop, and "felt" like questioning would stop if he continued to answer questions. He did not say that the lack of sleep had any negative affect on the voluntariness of his statements, and he acknowledged that he was advised of his *Miranda* rights and read and signed the waiver.
>
> Gainesville Police Department detectives Johnson and Senn obtained Defendant's confession. Johnson said that Defendant never said or did anything to indicate that the interview was not voluntary. He testified that Defendant did not tell him that he hadn't slept or eaten in the 36 hours before the confession. He said that neither he nor Detective Senn, who was with Johnson during the interview, made any of the promises or suggestions testified to by Defendant[.]
>
> Detective Senn testified that he and Johnson were together during Defendant's confession. He specifically denied that anyone made any of the promises or suggestions testified to by Defendant . . . .He said that Defendant never said or did anything to indicate that his statements to police were not voluntary.
>
> Defendant's trial attorney, E. Wilkov, testified that she met with Defendant at the jail weekly. She recalled discussing several specific topics with Defendant, including his relationship with the victim, his confession, a taped phone call Defendant made from the jail, and possible defenses.

She testified that she and her supervisor, J. Kearns, met with Defendant and viewed with him the video of his confession. She testified that she and Kearns decided that there was no good-faith basis to seek suppression of the confession. Kearns, who was the Chief Assistant Public Defender for the Eighth Judicial Circuit, testified that there were no concerns regarding the voluntariness of Defendant's confession.

The Court finds that the testimony of Wilkov and Kearns, as corroborated by Johnson and Senn, to be credible. Therefore, the court finds that Defendant's capacity to waive his *Miranda* rights and make voluntary statements was not impaired at the time of the confession. Even if the foregoing is not supported by the evidence, the Court finds that Defendant did not tell his attorneys anything about his mental state or police conduct during the confession that would have provided a good-faith basis to seek suppression or investigate further.

App. Exh. R. at 2140-42.

The state court's rejection of this claim was premised on crediting Wilkov's, Kearns', and the detectives' testimony at the evidentiary hearing over Petitioner's regarding whether there was any factual basis for concluding that Petitioner's confession was the product of coercion or was other than knowing and voluntary. "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)).  Questions about the credibility of witnesses are questions of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court."  *Id.*   It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence.  *Burt v. Titlow, ___ U.S. ___,*  2013 WL 5904117, *4.

At the evidentiary hearing, Wilkov's supervisor, Kearns, testified that if he had

thought there was a basis for suppressing the confession he would have discussed it with Wilkov.  Wilkov testified that she met with Petitioner many times over the course of the three years during which Petitioner's case was pending.  She viewed the videotaped confession with Kearns, discussed it with Petitioner, and decided "there was no viable motion to suppress" and the best strategy would be to admit the crime and mount a defense on the issue of premeditation, and try to minimize the damage that the evidence against Petitioner would do.  Petitioner repeatedly told her that he had never been abused by the victim.  She specifically recalled conferring with her supervisor and both concluding that there was no good-faith basis for a motion to suppress the confession.  App. Exh. LL at 587-94.

Petitioner attempted to establish through his own and expert testimony at the evidentiary hearing that he suffered from brain damage due to childhood injuries, was not taking Paxil that had been prescribed for depression at the time of the crime and confession, and was suffering from PTSD and suicidal thoughts at the time of the interrogation due to physical abuse by his father (who admitted abusing Petitioner as a child) and the victim.  *Id*. at 609-28.  He admitted on cross-examination, however, that he told his mental health counselor prior to the murder that the victim had not physically abused him.  *Id*. at 627.  The two psychiatrists who testified at the evidentiary hearing – many years following the murder and Petitioner's confession – testified that based on postconviction interviews with Petitioner and his reports to them, he was intimidated by the interrogators and suffering from exhaustion, stress, and PTSD during the interrogation.  *Id*. at 656–47.

A court must "judge the reasonableness of counsel's conduct on the facts of the

particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' ... and by giving a 'heavy measure of deference to counsel's judgments.' " *Rompilla v. Beard*, 125 S.Ct. 2456, 2462 (2005) (citations omitted).

In this case, Petitioner's argument that "witnesses and records" *could* have provided evidence that Petitioner suffered from conditions that rendered his waiver of *Miranda* rights and confession unknowing and involuntary relies heavily on hindsight and *post hoc* speculation by witnesses many years after the relevant events. Viewing the evidence of counsel's conduct at the time that it occurred, as established by her testimony, which the state court expressly found more credible than Petitioner's contrary evidence, Petitioner has failed to show that counsel's performance fell below an objective standard of reasonableness. On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt, ___ U.S. ___,* 2013 WL 5904117, *4 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).

After finding that Wilkov was not ineffective for not filing a motion to suppress, the state court concluded that Wilkov also was not ineffective for failing to seek a ruling on a suppression motion prior to the *Nixon* waiver. App. Exh. R. at 2142. Because the Court concludes that Petitioner has not established a basis for habeas relief under his first claim, it is clear that his second claim must fail for the same reasons.

***Claim 3: Ineffective Assistance regarding evidence of abuse by victim***

Petitioner contends that Wilkov was ineffective for failing to investigate and present evidence that the victim had verbally and sexually abused Petitioner.  Doc. 1 at 6.  Petitioner contends that the state opened the door to character evidence about the victim by eliciting testimony that the victim cared for Petitioner's needs as a mother would, and that there were no problems in their relationship.  *Id.*

In rejecting this claim on postconviction review, the state court determined:

> Defendant testified that the victim had verbally and sexually abused him for several years. Several other witnesses testified as to verbal abuse, and Defendant's friend Cleveland Jones testified that Defendant on one occasion told him that he had had sex with the victim.

> On this issue, Wilkov was clear that Defendant had told her none of the foregoing - in fact, Defendant had told her that he had never been abused by the victim. The Court accepts Wilkov's testimony as truthful and accurate.  Even if the Court's finding as to Wilkov's testimony on this issue is not supported by the evidence, the Court finds that evidence of abuse of Defendant by the victim would not have been admissible in evidence [under state law].

App. Exh. R. at 2142-43.

Again, the state court's credibility finding regarding Wilkov's testimony that Petitioner specifically denied abuse by the victim during the case preparation is not subject to redetermination on federal habeas review.  *Consalvo,* 664 F.3d at 845. Petitioner has not shown that any of his pretrial competency proceedings revealed any sexual abuse of him by the victim, nor has he shown that the absence of evidence of abuse at trial had any prejudicial effect on the defense theory that he lacked premeditation.  In the face of specific denials of abuse by her client, it cannot be said that counsel's failure to investigate and present evidence of sexual abuse of Petitioner

by the victim was objectively unreasonable.   On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Burt, ___ U.S. ___,*  2013 WL 5904117, *4.

### Claim 4: Ineffective assistance for failing to file motion in limine

Petitioner contends that counsel was ineffective for failing to file a motion in limine to exclude a poem he wrote.  Petitioner argues that the poem was "highly inflammatory" and possessed "no probative value," and that it was inadmissible under Florida law.  Doc. 1 at 7-8.

The handwritten poem that was found in Petitioner's bedroom during the crime scene investigation read as follows:

> Forgive me, father, for I am about to sin. I'm not worthy of your love because I love to sin. I have tried and tried, but I have failed. What I am about to do will have me put in jail. So much anger, so much hate, it is time for me to let it out, with no time to waste. I was born by myself, I will die by myself.

App. Exh. DD at 349.

In rejecting this claim on postconviction review, the state court determined:

> The admissibility of evidence rests within the sound discretion of a trial court, and such rulings will not be disturbed absent an abuse of discretion. *Naylor v. State*, 748 So.2d 385 (Fla. 3d DCA 2000). The court finds that the poem is relevant to the issue of premeditation, and that it is not unfairly prejudicial. Fla. Stat. §90.403. Therefore, Defendant has failed to show a reasonable probability that the outcome of the trial would have been different but for counsel's alleged ineffectiveness.  In other words, this court finds that there is no reasonable probability that a trial judge would exclude admissibility of the poem.

App. Exh. R at 2143.

Federal habeas courts do not sit to review State evidentiary rulings unless the

alleged error is of such a magnitude as to render the state defendant's trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 71 (1991); *Knight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir.1995).  In this case, Petitioner has not shown that the state court's determination that a motion in limine would not have succeeded under state law was contrary to, or an unreasonable application of, federal law.

At the postconviction evidentiary hearing, Wilkov testified that she did not believe there was a valid basis for objecting to admission of the poem.  App. Exh. LL at 598-99. In view of the state court's conclusion regarding the likely success of a motion in limine, counsel's decision not to seek exclusion of the poem is not objectively unreasonable. Further, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim on the prejudice prong of *Strickland* was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt, ___ U.S. ___,*  2013 WL 5904117, *4

### Claim 5: Counsel's failure to preserve the trial file

Petitioner contends that he was denied the right to due process in the postconviction proceeding because the trial file could not be located.  Petitioner asserts that counsel failed in her professional and ethical duties to preserve her trial file, and "sandbagged" the defense by refusing to answer questions in her deposition due to the lack of a trial file.  She was able to answer questions at the evidentiary hearing after reviewing the trial file at the State Attorney's office prior to the hearing.  Doc. 1 at 8.

In rejecting this claim on postconviction review, the state court determined:

Kearns testified that, when contacted by the office of defense attorney [Petitioner's counsel] Rudenstine . . . for copies of the defense file, he could not locate it. He testified that much of the file could be reconstructed

from the court file, except for attorneys' and investigators' notes. Wilkov
testified it was not her practice to prepare "attorney memos."

There is no evidence that the defense file became missing during Wilkov's
representation of Defendant (which ended upon filing a notice of appeal).
The file was discovered missing sometime after 26 November 2007. This
Court is reluctant to find that misplacing a defense file after representation
has ended is grounds for relief under Rule 3.850. Additionally, Defendant
has presented no evidence that the defense file contains anything that
would support his post-conviction motion. Prejudice is not presumed, but
must be shown by Defendant, pursuant to [*Strickland*].

App. Exh. R at 2144.

As the state court determined, Kearns testified that he conducted a search for

Petitioner's trial file after the postconviction motion was filed.  He testified that he knew

of other cases in which files were lost while the cases were pending and the files were

reconstructed.  He testified that the general paperwork and discovery could be

reconstructed from the clerk's file, the state attorney's office and, if there was a co-

defendant, from that counsel.  The file would be missing attorney memos and

interviews.  App. Exh. LL at 574-76.

Wilkov testified at the evidentiary hearing that after the trial was over, she

handed the file over to a secretary.   She did not see the file again.  Wilkov did not

maintain a separate trial file.  She testified that Kearns came to her during the

postconviction proceedings and asked if she knew where Petitioner's file was located.

Wilkov searched for the file, but was unable to locate it.  App. Exh. LL at 582-584.

States have no obligation to provide postconviction review, and such

proceedings do not encompass the full panoply of federal due process rights.  *See*

*Quince v. Crosby,* 360 F.3d 1259, 1261–62 (11th Cir. 2004) *(*explaining that "while

habeas relief is available to address defects in a criminal defendant's conviction and

sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.*"); Barbour v. Haley*, 471 F.3d 1222, 1228 (11th Cir. 2006).  In this case, Petitioner has made no showing that any due process rights implicated by the unavailability of Wilkov's file were not satisfied.  Petitioner had access, through counsel, to the extensive trial materials, including the court records of the pretrial competency proceedings, law enforcement materials, and the state court trial and appellate records. Petitioner, through counsel, engaged in postconviction discovery and presented numerous witnesses during the postconviction evidentiary hearing.   In sum, Petitioner has failed to show that the state court's rejection of this due process claim  reflects an unreasonable determination of the facts, or was contrary to, or an unreasonable application of, federal law.

### Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct

the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. 1, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 4th day of March 2014.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**